ALLEN, J.
This was a proceeding commenced under the 15th section of the act incorporating the Chesapeake and Ohio Canal Company, passed January 27, 1824, to condemn certain lands of the defendants in error, absolutely, and .other lands for the temporary use and occupation of the company, • for a period of five years. The law, after reciting that it is necessary for the making of the said canal, locks, dams, ponds, feeders, and other works, that provision should be made for condemning a quantity of land for the purpose, provides, if-the company cannot agree with the proprietors for the purchase, use and occupation thereof, that a warrant shall be issued by a justice of the peace, to the sheriff, to summon a jury. The sheriff is to administer an oath to the jury to value the land, and all damages the owner shall sustain by cutting the canal through such land, or the ■partial or temporary use or occupation of such land. And the inquisition is to be returned to the Court of the county; and unless good cause be shewn to the contrary, is to be affirmed by the Court, and recorded. If set aside, the Court may direct another inquisition. The jury is directed to describe, and ascertain the. bounds of the land by them valued, and the quality and duration of the interest and estate in the same required by the company for its use. *463 And their valuation shall be conclusive on all persons; and shall be paid by the company to the owner of the land. And upon such payment, the company shall be seized of such land as of an absolute estate, or with the less quantity and duration of interest, or subject to such partial appropriation, use and occupation as shall be required and described *as aforesaid, as if conveyed by the owner to the company. The same section furthermore provides for similar proceedings to procure earth, stone, gravel, or timber, necessary to be used in the construction of their works.
Under this act, an inquisition taken and returned to the County Court of Hampshire was affirmed, and ordered to be recorded. The company obtained a supersedeas from the Circuit Superior Court; and the judgment being affirmed, the case has been brought by supersedeas into this Court.
It is objected, that the Circuit Court of Hampshire had no jurisdiction to award a supersedeas to the order and judgment of the County Court, when proceeding under this act. No such authority, it is true, is conferred by express terms in the act; but the legislature seems to have contemplated that controversies would arise, and might be depending in the different Courts of the Commonwealth under the law. The 19th section makes it the duty of every Court in which such controversies are pending, to give them precedence, and determine them in preference to all other causes. In authorizing this proceeding, no new or extraordinary jurisdiction.-was created; nor was • a new mode of procedure unknown to our -laws, introduced. The County Court to which the inquest was to be returned, is the oldest tribunal in the Commonwealth ; and the mode by inquest is that prescribed by the general law to condemn lands for roads, mills, and other public improvements. The slight, variations from the general law in the provisions of this act were such as the character of the improvement and the extent of the appropriation of private property seemed to require. There perhaps was no necessity to obtain leave to erect a dam, as in the case of a private individual. That permission is conferred by the charter, whenever such a work was deemed necessary; and therefore no en-quiry is directed as to the health of *'the neighbours, the passage of fish, the overflowing of the mansion house, &c. of individuals. It was not intended that such inconveniences or private injuries should obstruct the execution of a great public work like this. But when the Legislature adopted this accustomed mode of proceeding, modified to suit the nature of the particular case; but in all other respects provided for its execution in the regular manner fixed by the general law, under the supervision of the established Courts of the country, it would seem that all the ordinary incidents attaching to such a procedure, attended this. When, too, the magnitude of the interests involved are considered, it can scarcely be conceived that it was intended to commit them to the unlimited discretion of an inquest in the country and the County Court. J?or whilst on one hand they might inflict most serious injury on private individuals, on the other they might arrest the proceedings of the company, if there is no supervising power. If such a restriction was intended to be imposed, it should have been expressed in clear terms. This has not been done; on the contrary, it is conceded that, from the words in the 19th section, applying to all Courts, the Legislature probably believed the power of supervision existed. Such, I have no doubt, was their understanding; and I do not think they were mistaken. The value of the subject in controversy, under the act of 1819, 1 E. C. ? 56, 57, furnished the measure of jurisdiction, and would have authorized the supersedeas; and the 30th section of the act concernng Circuit Superior Courts, Sup. Rev. Code, p. 145, removes all doubt on this head, if any could exist under previous laws.
The case of Hill v. Salem and Pepper’s Perry Turnpike Co., 1 Rob. R. 263, is supposed to have disaffirmed the jurisdiction. The Court did not mean to establish any such proposition in that case. It merely decides, that in the particular case an appeal was not demandable *as of right. It was not a case arising out of a controversy for the establishment of a road. The road, when located, was established by-the law incorporating the company. Where a company is incorporated to construct a road, or other public improvement, there is no necessity to procure the leave of the County Courts, as in ordinary cases; provision for a just compensation to the proprietor for the exercise of this •right of eminent domain on the part of the State,- is all that is required. The controversy in the case in 1 Rob.. R. 263, was not about the establishment of the road; that was not a subject of controversy; but about the compensation for the injury; a matter collateral to the establishment of the road. The party was entitled not to an appeal as of right, transferring the questions of fact as well as law to the Circuit Court; but to a supersedeas to correct any errors apparent on the record: and this was the extent of the decision in that case.
I think, therefore, the Circuit Superior Court had jurisdiction to award the super-sedeas, and revise the judgment of the Count}' Court.
It is further objected, that as the valuation of the jury is to be conclusive on all persons, and when paid the company shall be seized of the property absolutely, or for a less estate, or subject to a partial appropriation,- as if conveyed by the owner to them,, it is not competent to go into the enquiry whether the jury have erred in their valuation or not. When the valuation is properly made, it is to have that conclusive effect; but until affirmed by the Court, it cannot be said to be properly made. This confirmation is necessary to give it *464 the conclusive effect. The Court cannot substitute itself for the inquest and make the valuation; but until its sanction to the valuation made is given, the whole subject is open for investigation. As much injustice may be done where the jury proceeds upon erroneous principles, as where corruption or partiality is shewn. *The question raised by the objections taken to the inquest, is, whether it should be confirmed, so as to conclude all parties thereafter. And on that question it was competent for the Court to enquire whether the valuation and damages were excessive; whether subjects were embraced not properly within the scope of the en-quiry; and whether the finding has been such as to confer on the company the title to the property, and to protect it from future actions for the damages assessed.
On the merits, without going into formal defects, it seems to me the inquest is fatally defective on its face; and that if we look to the evidence offered in opposition to it, it is shewn to be defective in several other respects. The law requires the jury to value the land taken in perpetuity; to value or ascertain the damages the owner shall sustain by cutting the canal through the land; and the damages for the partial and temporary use and occupation of such land. These requisitions- are specific, and the in-questshould respond to each,-according to the principles of Kownslar v. Ward, Gilm. R. 127. The company desired to acquire land in perpetuity, apparently for the abutment of a dam; though this is not distinctly stated; and also the temporary use and occupation of a strip of ground on the margin of the river opposite the town of Cumberland in Maryland. The inquest assigned to the company three acres and upwards in perpetuity, but does not fix the value of it; and assigned upwards of seven acres for the temporary use of the company, but does not ascertain the damages the owner will sustain on account thereof; and then proceeds to ascertain the whole compensation to the owners for the value of the three acres and upwards, the use of the seven acres, and for cutting the said canal through the same, at 5769 dollars; without discriminating between the valuation and the damages. The canal, as it appears from the plat, passes on the opposite side of the river; and, therefore, no damage could have *been sustained by cutting the canal through this particular land. Whether the tract extended across the river or not, does not distinctly appear. If we look from-the inquisition to the bill of exceptions, which purports to set out the proof offered, (though on this head it is obscure and almost unintelligible,) it is somewhat doubtful whether the jury did not improperly estimate damages done to lands of these defendants situate in Maryland, from cutting the canal through the same. It is probable the words “for cutting the canal through the same” were copied from the terms of the act; and that no damages were allowed for this reason; yet the evidence tends to raise a doubt as to what the jury really did mean. Their finding is uncertain : and the fact that a doubt exists on this head, shews the necessity of responding to the various requisitions of the law. It is, besides, of importance to the rights of the company that the inquest should shew the consideration paid for the land acquired in perpetuity; and to distinguish between that, and damages allowed for temporary use of the land assigned for a term of years: and the precise damages allowed for the use of the seven acres might be very material in any future controversy growing out of any alleged abuse of the privilege allowed.
When the evidence is examined, the uncertainty becomes still greater. The inquest should be so specific as to protect the company from any action for damages anticipated and assessed. The evidence proves that a portion of the aggregate sum allowed, and perhaps much the larger portion, was allowed for such anticipated injuries; but the inquest discloses nothing from which it could be inferred in any future controversy that such injuries were foreseen and provided for.
Thus it appears, as well from the admission of the parties as the evidence, that the company desired the temporary use of the seven acres along the margin of the river for the purpose of removing the soil to the *depth of the river bottom, to be carried into Maryland for embankments, and thereby to widen the bed of the river. In effect to convert arable land into the bed of the stream. The inquest gave the company the use and occupation of this land as if it had been convej'ed. A conveyance for five years would have made them lessees for that term; and'could not have justified waste, amounting to the destruction of the thing. If it was intended to allow for this destruction of the subject, as no doubt was the fact, the jury should have described not only the quantity of the estate, the duration of the interest, but the quality of it; the condition under which the company was to hold it; and the purposes to which it was to be applied. The act in truth requires this to be done; and where it is to be used, not in the ordinary mode as a residence for hands employed, or a place for the deposite of materials, but in the mode here contemplated, it was essential the facts should be set out. As it is, the company would have no right to remove the soil or commit any waste; if they did, they would be liable to an action, and though in fact they may have paid the fee simple value of the land, the inquest would furnish no protection. It also appears from the admission of the parties, that the jury took into consideration damages necessary to protect the land from abrasions to which it would be exposed by the removal of the bank and land condemned for temporary uses. Nothing appears of this in the inquest, or could appear if a suit should be brought at some distant day for this injury. So it is proved the jury took into *465 consideration injuries to this and adjoining tracts of the owners from the erection of the dam. The inquest is silent on this point. It should at least have ascertained the contemplated height of the dam, and the quantity of land that would be covered by the refluent water, and its value, or what was the injury or inconvenience for which damages were allowed. These matters the company *had a right to insist should be specified, as well to enable the Court to arrive at a correct conclusion upon the question of excess, as to afford a protection against future actions to recover for the same injuries.
I think the judgment of the County Court affirming the inquisition was erroneous.
The other Judges concurred.
The judgment of the Court was as follows :
It seems to the Court here, that said Circuit Superior Court erred in affirming the sentence and order of the County Court affirming said inquisition, and ordering the same to be recorded. Therefore it is considered that the judgment of said Circuit Superior Court be reversed and annulled, and that the plaintiffs in error recover of the defendants in error their costs, &c. And this Court proceeding to render such judgment in the premises as said Circuit Superior Court should have rendered, it seems to the Court here, that said inquisition is defective in not distinguishing between the valuation of the land condemned for the use of the company in perpetuity, and the damages allowed for the temporary use and appropriation of other lands, and damages allowed for any other inconveniences which might be sustained by the owners. And furthermore, as it appears from the evidence, that the jury took into consideration the injuries which might be sustained bj the owners from the erection of the contemplated dam; and also the damages which might be sustained in protecting other lands of the proprietors from abrasions and inundations to which it would be exposed by the removal of the bank and land condemned for temporary purposes; and also the damages which would be sustained by the removal of the soil from the land condemned for temporary purposes, and so converting the same into the bed of the river, the inquest was defective in not particularly ^specifying these various injuries, and the damages allowed for each, so as to protect the company from any future action for the same cause; and in not specifying the quality of, or condition on which the companj was to hold the estate in the land condemned for temporary purposes, as well as the duration of the estate; so as to protect the company from any other suit for using the land so condemned in a manner inconsistent with the quantity of estate vested in them; if said estate was sought to be condemned and used for purposes, and subject to conditions not Incident to a mere estate for years.
Therefore it is considered that the sentence and order of the County Court affirming said inquest and ordering the same to be recorded, be reversed and annulled; and that the plaintiffs in error recover of the defendants in error their costs in said Circuit Superior Court expended; that said inquisition of the jury be set aside; and the cause remanded to the County Court for another inquisition, and for further proceedings. _